Steven W. Ritcheson (SBN 174062)
    Email: swritcheson@insightplc.com
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191

Travis E. Lynch (SBN 335684)
    Email: lynch@rhmtrial.com
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1862

*For Plaintiff FLEET CONNECT SOLUTIONS LLC*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC,, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | JURY TRIAL DEMANDED |
| TELETRAC NAVMAN US LTD., | |
| Defendant. | |

Plaintiff Fleet Connect Solutions LLC ("FCS" or "Plaintiff") files this Complaint against Teletrac Navman US Ltd., ("Teletrac" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), copies of which are attached hereto as **Exhibit A, Exhibit B, Exhibit C, Exhibit D**, **Exhibit E**, and **Exhibit F,** respectively:

|    | U.S. Patent No. | Title |
|----|----|----|
| A. | 6,429,810 | Integrated Air Logistics System |
| B. | 7,536,189 | System And Method For Sending Broadcasts In A Social Network |
| C. | 7,599,715 | System And Method For Matching Wireless Devices |
| D. | 7,741,968 | System And Method For Navigation Tracking Of Individuals In A Group |
| E. | 9,299,044 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices |
| F. | 9,747,565 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices |

2.     Plaintiff seeks monetary damages.

## PARTIES

3.     Plaintiff is a limited liability company formed under the laws of Texas with a registered office address located in Austin, Texas (Travis County).

4.     Teletrac is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 310 Commerce, Suite 100, Irvine, California 92602.

5.     Teletrac may be served through its registered agent for service, 1505 Corporation CSC Lawyers Incorporating Service, located at 2710 Gateway Oaks Drive, Sacramento, California 95833.

## JURISDICTION AND VENUE

6.     FCS repeats and re-alleges the allegations in the Paragraphs above as though

1 | fully set forth in their entirety.

2 |    7.    This is an action for infringement of a United States patent arising under 35

3 | U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter

4 | jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

5 |    8.    Venue is proper against Defendant in this District pursuant to 28 U.S.C. §

6 | 1400(b) and 1391(c) because it has maintained established and regular places of

7 | business in this District and has committed acts of patent infringement in the District.

8 | *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9 |    9.    Defendant is subject to this Court's specific and general personal

10 | jurisdiction under due process and/or the California Long Arm Statute due at least to

11 | Defendant's substantial business in this judicial district, including: (i) at least a portion

12 | of the infringements alleged herein; and (ii) regularly doing or soliciting business,

13 | engaging in other persistent courses of conduct, or deriving substantial revenue from

14 | goods and services provided to individuals in California and in this district.

15 |    10.    Specifically, Defendant intends to do and does business in, and has

16 | committed acts of infringement in this District directly and through intermediaries,

17 | and offered its products or services, including those accused of infringement here, to

18 | customers and potential customers located in California, including in this District.

19 |    11.    Defendant maintains regular and established places of business in this

20 | District.

21 |    12.    For example, Defendant owns, operates, manages, conduct businesses, and

22 | directs and controls the operations and employees of facilities at several locations in

23 | this District.

24 |    13.    Defendant maintains its principal place of business in this District.

25 |    14.    Defendant has committed acts of infringement from this district, including,

26 | but not limited to, use of the Accused Products.

27 | **THE ACCUSED PRODUCTS**

28 |    15.    FCS repeats and re-alleges the allegations in the Paragraphs above as though

fully set forth in their entirety.

16.     Based upon public information, Defendant owns, operates, advertises, and/or controls the website www.teletracnavman.com through which it advertises, sells, offers to sell, provides and/or educates customers about its products and services.

17.     Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes fleet management platform and tracking solution systems. *See, e.g.,* **Exhibit I**.

18.     Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes the Teletrac Navman fleet management platform and tracking solution, which includes, but is not limited to, the TN480, ATS1, Qube300, VT101, VT102, ST101, SI201, RE200, RE400, AT301, MT201, MT501, Smart Quad-Dashcam, Smart Dual-Dashcam, TN360 - Power Take-Off Sensor, Fleet Director Tablet, Teletrac Drive Tablet (each of the forgoing, a "Teletrac Device," and collectively, the "Teletrac Devices"), Teletrac's ELD on TN360, DIRECTOR® Electronic Logging Device, TN360 Mobile App(lication), DRIVE App(lication) for Android, TN360 Sentinel ELD App(lication), TN360 Messaging App(lication), Insights from TN360, TN360 SmartJobs App(lication), TN360 EasyDocs App(lication), TN360 Forms App(lication), Journey Planner App(lication), SmartNav Route App(lication), TN360 Pre-trip Checklist App(lication), TN360 dashboard/software platform, TN360 Fleet Management Software, TN360 ACM Equipment Management Software, GPS Asset Tracking Systems, (each of the forgoing, a "Teletrac App," and collectively, the "Teletrac Apps"), and associated hardware, software, applications, and functionality (collectively, the "Accused Products").

19.     The Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various communication standards, protocols, and implementations, including, but not limited

to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11a, 802.11ac, 802.11b, 802.11g, and 802.11n.

20.     The wireless communications performed and/or implemented by the Accused Products, among other things, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

21.     The Accused Products also track, analyze, and report vehicle maintenance needs, track or cause to be tracked vehicle locations, and allow for communication between a system administrator and a remote unit, including broadcasting advisory communications.



(Source: https://fleetlogging.com/teletrac-navman/)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



(Source: https://www.dnavdeej.com/teletrac-navman-complexity)



Teletrac Drive is a comprehensive application suite for Android™ that offers users a variety of advanced in-vehicle apps, including turn-by-turn, voice guided navigation and two-way messaging. Teletrac Android-based tablets are fully equipped with the built-in Drive suite and Bluetooth capable, allowing drivers to stay guided and connected via a wireless, easy-to-use platform.

This guide describes how to use the Navigation and Messaging Apps, as well as how to set Bluetooth connection for in-vehicle device use.

(Source: https://community.teletrac.com/teletrac.com/assets/2014-04-23_android%20tablet%20user%20guide.pdf)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Introduction to the Fleet Director Tablet**



**Note:** The above image displays the Main Screen on the Tablet configured for HOS.

**Tablet Modes**

*The following information is only when the HOS application is configured for the vehicle.*

The Tablet is connected to the Prism unit (black box) which is installed in the vehicle.  The Prism unit in turn is connected to the vehicle's diagnostics and knows whether the vehicle is moving or stationary at any given time. The Prism unit can then command the Tablet to lock or unlock for use depending on vehicle movement.  This feature is in place for safety reasons.

(Source: https://community.teletrac.com/teletrac.com/ assets/fleetdirector%20tabletguide_hos.pdf)

Download The Case Study Here.
When Teletrac was choosing a platform to provide more value to customers earlier this year they turned to Android.
A new case study by Samsung illustrates how Teletrac has built a more robust and flexible logistics platform for its customers and their drivers on the Android platform.

A key way has been by integrating Samsung's Galaxy Tab and its Android operating system to host Teletrac's Drive app. Teletrac Drive for Android allows users to access multiple app-based functions, such as messaging, GPS navigation and compliance solutions.

The app suite is currently available on the Teletrac Tablet for Android and the 7-inch Samsung Galaxy Tab 3.
The case study notes the benefits of the Tablet, including wireless connectivity: "The Teletrac system includes a Vehicle Location Unit (VLU), which is a small device installed in the truck and pings location and diagnostic information back to the Teletrac Cloud Services and Fleet Director Software. Unlike the previous tablet that had to be hard-wired to the VLU, the Samsung Galaxy Tab wirelessly connects to the VLU over Bluetooth, which significantly reduces installation time and cost. Depending on customer preference, the tablet can be removed from the enclosure and used by drivers when they stop for meals or overnight rests."
Customers with the Android offering have embraced the new user experience. Teletrac customer A.N. Webber noted it takes them less time to download logs, access reports and receive updates on delivery routes. "The trucking business is highly competitive, and we are always looking for ways to improve driver productivity and satisfaction," said Rob Koch, Vice President of Operations, A.N. Webber.

(Source: https://www.teletracnavman.com/resources/blog/samsung-highlights-gps-benefits)

22.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,429,810**

23.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

24.     The USPTO duly issued U.S. Patent No. 6,429,810 (hereinafter, the "'810 patent") on August 6, 2002 after full and fair examination of Application No. 09/774,547 which was filed January 31, 2001.  A true and correct copy of the '810 patent is attached as **Ex. A**.

25.     FCS owns all substantial rights, interest, and title in and to the '810 patent,

1  including the sole and exclusive right to prosecute this action and enforce the '810

2  patent against infringers and to collect damages for all relevant times.

3      26.    The claims of the '810 patent are not directed to an abstract idea and are not

4  limited to well-understood, routine, or conventional activity.  Rather, the claimed

5  inventions include inventive components that improve upon the function and operation

6  of preexisting systems and methods of generating packets in a digital communications

7  system.

8      27.    The written description of the '810 patent describes in technical detail each

9  limitation of the claims, allowing a skilled artisan to understand the scope of the claims

10 and how the non-conventional and non-generic combination of claim limitations is

11 patently distinct from and improved upon what may have been considered

12 conventional or generic in the art at the time of the invention.

13     28.    Based upon information and belief, FCS is informed and believes that

14 Defendant has directly infringed one or more claims of the '810 patent by making,

15 using, selling, offering to sell, and/or internal and external testing of the Accused

16 Products.

17     29.    Upon information and belief, Defendant has directly infringed, either

18 literally or under the doctrine of equivalents, at least claim 30 of the '810 patent.

19     30.    An example of Defendant's infringement of claim 30 is provided in **Exhibit**

20 **H**.

21     31.    FCS or its predecessors-in-interest have satisfied all statutory obligations

22 required to collect pre-filing damages for the full period allowed by law for

23 infringement of the '810 patent.

24     32.    FCS has been damaged as a result of the infringing conduct by Defendant

25 alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for

26 such infringements, which by law cannot be less than a reasonable royalty, together

27 with interest and costs as fixed by this Court under 35 U.S.C. § 284.

28     33.    FCS has suffered irreparable harm, through its loss of market share and

goodwill, for which there is no adequate remedy at law.  FCS has suffered this harm by virtue of Defendant's infringement of the '810 patent.  Defendant's actions have interfered with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.

**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,536,189**

34.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

35.     The USPTO duly issued U.S. Patent No. 7,536,189 (hereinafter, the "'189 patent") on May 19, 2009 after full and fair examination of Application No. 12/018,588 which was filed on January 23, 2008.  *See* **Ex. B**.

36.     FCS owns all substantial rights, interest, and title in and to the '189 patent, including the sole and exclusive right to prosecute this action and enforce the '189 patent against infringers and to collect damages for all relevant times.

37.     The claims of the '189 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

38.     The written description of the '189 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

39.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '189 patent based by making, using, selling, offering to sell, and/or internal and external testing of the Accused Products.

40.     Upon information and belief, Defendant has directly infringed, either

1    literally or under the doctrine of equivalents, at least claim 1 of the '189 patent.

2    41.    An example of Defendant's infringement of claim 1 is provided in **Exhibit**
3    **I**.

4    42.    FCS or its predecessors-in-interest have satisfied all statutory obligations
5    required to collect pre-filing damages for the full period allowed by law for
6    infringement of the '189 patent.

7    43.    FCS has been damaged as a result of the infringing conduct by Defendant
8    alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for
9    such infringements, which by law cannot be less than a reasonable royalty, together
10   with interest and costs as fixed by this Court under 35 U.S.C. § 284.

11   44.    FCS has suffered irreparable harm, through its loss of market share and
12   goodwill, for which there is no adequate remedy at law.  FCS has suffered this harm
13   by virtue of Defendant's infringement of the '189 patent.  Defendant's actions have
14   interfered with FCS's ability to license technology.  The balance of hardships favors
15   FCS's ability to commercialize its own ideas and technology.

16   **COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,599,715**

17   45.    FCS repeats and re-alleges the allegations in the Paragraphs above as though
18   fully set forth in their entirety.

19   46.    The USPTO duly issued U.S. Patent No. 7,599,715 (hereinafter, the "'715
20   patent") on October 6, 2009 after full and fair examination of Application No.
21   12/389,245 which was filed on February 19, 2009.  A true and correct copy of the '715
22   patent is attached as **Ex. C**.

23   47.    FCS owns all substantial rights, interest, and title in and to the '715 patent,
24   including the sole and exclusive right to prosecute this action and enforce the '715
25   patent against infringers and to collect damages for all relevant times.

26   48.    The claims of the '715 patent are not directed to an abstract idea and are not
27   limited to well-understood, routine, or conventional activity.  Rather, the claimed
28   inventions include inventive components that improve upon the function and operation

of preexisting systems and methods of generating packets in a digital communications system.

49.     The written description of the '715 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

50.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '715 patent by making, using, selling, offering to sell, and/or internal and external testing of the Accused Products.

51.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 31 of the '715 patent.

52.     An example of Defendant's infringement of claim 31 is provided in **Exhibit J**.

53.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '715 patent.

54.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

55.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has suffered this harm by virtue of Defendant's infringement of the '715 patent.  Defendant's actions have interfered with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.

1

**COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,741,968**

2   56.   FCS repeats and re-alleges the allegations in the Paragraphs above as though

3   fully set forth in their entirety.

4   57.   The USPTO duly issued U.S. Patent No. 7,741,968 (hereinafter, the "'968

5   patent") on June 22, 2010 after full and fair examination of Application No.

6   12/143,707 which was filed on June 20, 2008.  *See* **Ex. D**.

7   58.   FCS owns all substantial rights, interest, and title in and to the '968 patent,

8   including the sole and exclusive right to prosecute this action and enforce the '968

9   patent against infringers and to collect damages for all relevant times.

10   59.   The claims of the '968 patent are not directed to an abstract idea and are not

11   limited to well-understood, routine, or conventional activity.  Rather, the claimed

12   inventions include inventive components that improve upon the function and operation

13   of preexisting systems and methods of generating packets in a digital communications

14   system.

15   60.   The written description of the '968 patent describes in technical detail each

16   limitation of the claims, allowing a skilled artisan to understand the scope of the claims

17   and how the non-conventional and non-generic combination of claim limitations is

18   patently distinct from and improved upon what may have been considered

19   conventional or generic in the art at the time of the invention.

20   61.   Based upon information and belief, FCS is informed and believes that

21   Defendant has directly infringed one or more claims of the '968 patent based at least

22   by its making, using, selling, offering to sell, and/or internal and external testing of the

23   Accused Products.

24   62.   Upon information and belief, Defendant has directly infringed, either

25   literally or under the doctrine of equivalents, at least claim 7 of the '968 patent.

26   63.   An example of Defendant's infringement of claim 7 is provided in **Exhibit**

27   **K**.

28   64.   FCS or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the '968 patent.

65.     Since at least the time of receiving the original complaint in this action, Defendant has indirectly infringed and continues to indirectly infringe the '968 patent by inducing others to directly infringe the '968 patent.  Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, contractors, customers and/or potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '968 patent by providing or requiring use of the Accused Products.  Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '968 patent, including, for example, claim 7.  Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website/dashboard and/or *via* the Teletrac Apps.  Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '968 patent and with the knowledge that the induced acts constitute infringement.  Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '968 patent.  Defendant's inducement is ongoing.

66.     Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '968 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '968 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '968 patent, including, for

example, claim 7.  The special features constitute a material part of the invention of one or more of the claims of the '968 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

67.     Defendant had knowledge of the '968 patent at least as of the date when it was notified of the filing of this action.

68.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of FCS's patent rights.

69.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

70.     Defendant's direct infringement of the '968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

71.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '968 patent.

72.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

73.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '968 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude

outweighs other public interests, which supports injunctive relief in this case.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 9,299,044**

74.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

75.     The USPTO duly issued U.S. Patent No. 9,299,044 (the "'044 patent") on March 29, 2016, after full and fair examination of Application No. 14/480,297 which was filed September 8, 2014.  A true and correct copy of the '044 patent is attached as **Ex. E**.

76.     FCS owns all substantial rights, interest, and title in and to the '044 patent, including the sole and exclusive right to prosecute this action and enforce the '044 patent against infringers and to collect damages for all relevant times.

77.     The claims of the '044 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

78.     The written description of the '044 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

79.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '044 patent based at least by its making, using, selling, offering to sell, and/or internal and external testing of the Accused Products.

80.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '044 patent.

81.     An example of Defendant's infringement of claim 1 is provided in **Exhibit**

L.

82.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '044 patent.

83.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

84.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has suffered this harm by virtue of Defendant's infringement of the '044 patent.  Defendant's actions have interfered with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 9,747,565**

85.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

86.     The USPTO duly issued U.S. Patent No. 9,747,565 (hereinafter, the "'565 patent") on August 29, 2017 after full and fair examination of Application No. 15/071,003 which was filed on March 15, 2016.  *See* **Ex. F**.

87.     FCS owns all substantial rights, interest, and title in and to the '565 patent, including the sole and exclusive right to prosecute this action and enforce the '565 patent against infringers and to collect damages for all relevant times.

88.     The claims of the '565 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

89.     The written description of the '565 patent describes in technical detail each

limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

90.     Based upon information and belief, FCS is informed and believes that Defendant has directly infringed one or more claims of the '565 patent based at least by its making, using, selling, offering to sell, and/or internal and external testing of the Accused Products.

91.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '565 patent.

92.     An example of Defendant's infringement of claim 1 is provided in **Exhibit M**.

93.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '565 patent.

94.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

95.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has suffered this harm by virtue of Defendant's infringement of the '565 patent.  Defendant's actions have interfered with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.

### JURY DEMAND

96.     FCS hereby requests a trial by jury on all issues so triable by right.

### PRAYER FOR RELIEF

97.     FCS requests that the Court find in its favor and against Defendant, and that

the Court grant FCS the following relief:

a. Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b. An award of a reasonable royalty for infringement Asserted Patents;

c. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '968 patent or, in the alternative, an award of a reasonable ongoing royalty for future infringement of these patents by such entities;

d. Judgment that Defendant accounts for and pays to FCS all damages to and costs incurred by FCS because of Defendant's infringing activities and other conduct complained of herein;

e. Judgment that Defendant's infringements be found willful as to the '968 patent and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

f. Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

g. That this Court declare this an exceptional case and award FCS its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

h. All other and further relief as the Court may deem just and proper under the circumstances.

DATED: February 2, 2024          Respectfully submitted,

*/s/ Steven W. Ritcheson*

Steven W. Ritcheson (SBN 174062)
**INSIGHT, PLC**
578 Washington Blvd. #503
Marina del Rey, California 90292
Telephone: (424) 289-9191
Email: swritcheson@insightplc.com

Travis E. Lynch (SBN 335684)
**ROZIER HARDT MCDONOUGH PLLC**
3659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1862
Email: lynch@rhmtrial.com

Attorneys for *FLEET CONNECT SOLUTIONS LLC*

**List of Exhibits**

A. U.S. Patent No. 6,429,810
B. U.S. Patent No. 7,536,189
C. U.S. Patent No. 7,599,715
D. U.S. Patent No. 7,741,968
E. U.S. Patent No. 9,299,044
F. U.S. Patent No. 9,747,565
G. Webpage: ELD on TN360
H. Claim Chart for U.S. Patent No. 6,429,810
I.  Claim Chart for U.S. Patent No. 7,536,189
J.  Claim Chart for U.S. Patent No. 7,599,715
K. Claim Chart for U.S. Patent No. 7,741,968
L. Claim Chart for U.S. Patent No. 9,299,044
M. Claim Chart for U.S. Patent No. 9,747,565